Graffeo, J.
(dissenting). Because we conclude that the Division of Housing and Community Renewal (DHCR) acted rationally in accepting comparable rent data based on its interpretation of relevant provisions of the Rent Regulation Reform Act of 1997, we respectfully dissent.
In May 1990, Anne Gilman moved into a Manhattan apartment previously subject to rent control. Pursuant to Rent Stabilization Code (9 NYCRR) § 2523.1, the building owner notified Gilman of the “initial legal regulated rent” for the unit — $2,095—and of her right to bring a proceeding challenging the amount of rent. Gilman exercised that right by commencing a fair market rent appeal (FMRA). DHCR notified the building owner of Gilman’s filing in 1992, and the owner’s managing agent, also appearing pro se, then requested an FMRA answering package. DHCR failed to respond to the owner’s request.[1]
Having not received a decision from DHCR, in March 1994 Gilman commenced a CPLR article 78 mandamus proceeding to compel the agency to rule on her FMRA, and the parties *153 resolved the proceeding by stipulation. The agency immediately sent an FMRA answering package to the owner’s agent, which included instructions indicating that an owner could submit comparability data relating to rents for similar units, provided the owner proved the legality of the rents for the units claimed as comparable.[2] The owner’s agent made several requests for additional time to compile and submit this data. Specifically, in an April 19, 1994 letter to DHCR, the agent noted the two-year delay in receiving notice of Gilman’s complaint and explained that during that period “many things had happened to the management and ownership of the property. The Managing Agent had passed away and a new Managing Agent has been appointed and the records are not readily available at this time.”
In July 1994, DHCR’s Rent Administrator (RA) issued an order setting the initial legal regulated rent at $1,011.12— approximately $1,000 per month less than the amount initially charged by the owner — and directing the owner to refund or credit Gilman with about $49,000 for excess rent paid. In the absence of comparability data from the owner, the RA based the calculations on the rent guidelines formula applicable in cases without such data. The owner timely challenged this determination by filing a petition for administrative review (PAR) objecting to, among other things, DHCR’s failure to consider the owner’s latest request for additional time to submit comparability data.
While the owner’s PAR was pending, the Legislature passed the Rent Regulation Reform Act of 1997 (RRRA) (L 1997, ch 116). The Act consisted of “a comprehensive package of reforms” (Mem of Senate Rules Comm, Bill Jacket, L 1997, ch 116, at 36) designed to simplify the administration of rent regulation. According to one commentator, the Act was the most sweeping revision of rent regulation laws in over two decades, enacted after a long political battle between property owners and tenant groups (see Parella, 1996-97 Survey of New York Law: Real Property, 48 Syracuse L Rev 821, 826 [1998]).
In particular, the Act amended New York City Rent Stabilization Law (Administrative Code of City of NY) § 26-516 (a) to clarify and reinforce the four-year statute of limitations in rent *154 overcharge claims (see Governor’s Mem approving L 1997, ch 116, 1997 McKinney’s Session Laws of NY, at 1923). That section precludes “examination of the rental history of the housing accommodation prior to the four-year period preceding the filing of a complaint” (NY City Rent Stabilization Law § 26-516 [a] [2]). This amendment, which became effective immediately upon enactment, was to apply to “any application, complaint or proceeding before an administrative agency on the effective date of this act, as well as any action or proceeding commenced thereafter” (L 1997, ch 116, § 46 [1]).
DHCR interpreted the Act’s four-year rule as applicable to all pending rent and overcharge challenges, including FMRAs (see Estis and Turkel, Rent Regulations, Four-Year Rule: DHCR Issues Broad Interpretation of Limitation Provisions, NYLJ, Nov. 4, 1998, at 5, col 2). Accordingly, the agency initiated State Administrative Procedure Act procedures to conform its regulations to the new statute, with the intended purpose of easing the proof requirements which had previously governed the submission of comparability data (see NY Reg, Apr. 5, 2000, at 17-19; compare 9 NYCRR 2522.3 [e], with former 9 NYCRR 2522.3 [e]).
Consistent with this policy, in June 1999, DHCR sent the owner notification entitled “Request for Comparability Data Pursuant to Rent Regulation Reform Act of 1997,” stating: “[a]s a result of changes in the processing of Fair Market Rent Appeals mandated by the Rent Regulation Reform Act of 1997 and recent court decisions, you are hereby afforded a final opportunity to submit comparability data.” The owner responded by delivering comparability data. DHCR then mailed Gilman a “Notice of Opportunity to Submit Evidence,” explaining that she was being provided an opportunity to comment on the comparability data submitted by the owner. Gilman replied that the new data should be ignored by DHCR because it was new evidence that could not be offered at the PAR stage.
DHCR’s Deputy Commissioner partially granted the owner’s PAR to reflect consideration of the comparability data submitted by the owner pursuant to the RRRA of 1997, ruling that two units constituted comparables and that it was unnecessary for the owner “to prove service of a notice of initial rent on the tenants of comparable apartments if the apartments have been registered for at least four years without challenge” (Deputy Commr order, Dec. 16, 1999, at 3-4). Using the accepted com-parables, the Deputy Commissioner concluded that the appropriate legal rent was $1,754.64, or approximately $340 per *155 month less than the initial rent established in 1990. However, because the earlier RA order had reduced the initial rent by almost $1,000 per month, the new determination meant that Gilman had underpaid for five years, resulting in approximately $47,000 in rent arrears. Gilman thereafter commenced this CPLR article 78 proceeding to annul DHCR’s determination.
A court may not disturb an administrative determination unless it lacks any rational basis (see Matter of Nehorayoff v Mills, 95 NY2d 671, 675 [2001]; Matter of County of Monroe v Kaladjian, 83 NY2d 185, 189 [1994]; Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974]). In light of the enactment of the RRRA of 1997, the issue distills to whether DHCR acted irrationally when it notified the owner of the new legislation and accepted comparability data during the administrative appeal process. Relying on a DHCR regulation which permits PAR review of new evidence only upon a showing that the evidence could not reasonably have been included before the rent administrator (see 9 NYCRR 2529.6), Gilman contends, and the majority concludes, that the agency was precluded from considering the owner’s comparability data during this PAR proceeding. We disagree.
The majority reads this regulation as requiring the owner to demonstrate that, in 1994, the documentation proving that the comparability data were legally sufficient under the old requirements did not exist. This view of the regulation unduly restricts DHCR’s authority. First, the regulation itself merely requires an owner to establish that the evidence “could not reasonably have been offered or included” at the RA level (see 9 NYCRR 2529.6). There are various conceivable explanations that DHCR might accept as satisfactory under the PAR new evidence regulation, including, perhaps, the reasons proffered in the owner’s April 1994 extension request. Second, by limiting the manner in which the owner could satisfy the regulation to a showing that the owner was not in possession of the proof formerly required, the majority effectively deprives the owner of the benefit of the new legislation which the majority concedes was intended to reduce those strict proof requirements. Because the RRRA was applicable to all pending proceedings, including this PAR proceeding, it was not arbitrary or capricious for the agency to determine that the regulation did not prevent the owner from attempting to meet the new proof requirements.
Most importantly, the majority fails to grant the agency the appropriate deference in fashioning procedures to respond to *156 this unusual situation (see Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363 [1987]). Faced with sweeping new legislation applicable to all pending proceedings, DHCR immediately changed its policies and began the process of revising its regulations to implement the Act. The agency determined that compliance with the Legislature’s intent to lessen owners’ strict proof requirements necessitated providing owners with an opportunity to submit comparability data in pending cases under the new standard, dispensing with some of the registration documentation previously required. We conclude that DHCR’s decision to consider the owner’s new submission was rational under these extraordinary circumstances.
DHCR solicited the admission of comparability data precisely because of the modification in proof requirements and was aware that the owner’s new evidence would have been rejected as inadequate had it been tendered prior to the enactment of the RRRA.[3] Viewed in this light, the agency’s decision to consider the data without requiring the owner to separately establish that it could not reasonably have been included earlier in the proceeding was not an irrational implementation of the new statute. Put another way, having determined that the legislation applied to all pending proceedings and required alteration of the nature of proof the agency could consider in calculating fair market rents, it was not arbitrary or capricious for the agency to reopen the record of this proceeding to accept comparability data.
To be sure, the RRRA did change the rules midstream. DHCR was obligated to give effect to the legislative mandate that the Act be applied to all pending proceedings. The majority suggests an alternative procedure that DHCR might have followed in this case. Even if we were to agree that the administrative process the majority has devised would have been preferable, we would reach a contrary result because our power in the context of a CPLR article 78 proceeding is limited to assessing whether the procedure DHCR employed was rational under the circumstances presented — not whether a better course of action was available to the agency. Accordingly, we would affirm the order of the Appellate Division.
*157 Chief Judge Kaye and Judges Smith and Ciparick concur with Judge Wesley; Judge Graffeo dissents and votes to affirm in a separate opinion in which Judges Levine and Rosenblatt concur.
Order reversed, etc.

. During this period, DHCR had a substantial backlog of pending cases. In the overcharge unit alone, DHCR claims it had over 26,000 cases pending in 1992, approximately 24,000 cases in 1993 and more than 26,000 cases in 1994. DHCR states that by May 2002, it had reduced this backlog to about 2,000 pending overcharge proceedings.

. Specifically, DHCR previously required owners to establish the legality of the rents charged for the proposed comparable units by submitting proof that the first rent-stabilized tenant had received notice of the right to challenge the rent and that any such challenge had been finally resolved by the agency or that the time to challenge had expired.

. At oral argument, the attorney for DHCR stated that the agency would have rejected the owner’s data had it been proffered under the former statute and guidelines.